IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| Flora SETAYESH, | ) |
|    Plaintiff, | ) ) ) Case No. 3:2018-cv-00335 |
| v. | ) ) |
| FLORA TYDINGS and KIM MCCORMICK, in their individual capacities | ) ) Judge Trauger ) Magistrate Judge Newbern ) ) |
|    Defendants. | ) |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S CONCISE STATEMENT OF ADDITIONAL FACTS

Come now the Defendants, by and through the Attorney General, who respond to Plaintiff's Additional Facts as follows:

1. Plaintiff is an adult citizen of Tennessee, who resides in Williamson County, Tennessee, and is a person within the meaning of 42 U.S.C.A. § 1983. (Doc. No. 7 ¶ 5).

**RESPONSE: Admitted.**

2. Defendant, Flora Tydings, is an adult citizen of Tennessee and was, starting in February, 2017 and continuing to date, employed by the Tennessee Board of Regents as Chancellor. (Doc. No. 7 ¶ 9).

**RESPONSE: Admitted.**

3. Defendant, Kim McCormick, is an adult citizen of Tennessee, and was, starting in January of 2018 and continuing until June of 2018, employed by Nashville State Community

College as the Interim President. She is currently employed by the Tennessee Board of Regents as the Vice Chancellor of External Affairs. (Doc. No. 7 ¶ 10).

**RESPONSE: Admitted.**

4. Nashville State has continuously employed Plaintiff since August of 2001 and currently employs Plaintiff as a tenured professor in the Chemistry Department. (Doc. No. 30 ¶ 11; Setayesh Aff. ¶ 3).

**RESPONSE: Admitted.**

5. On or about July 11, 2014, Nashville State appointed Plaintiff as Interim Associate Vice President for Academic Affairs/ Executive Assistant to the President, setting the Plaintiff's salary at $93,481.50. (Doc. No. 30 ¶ 12-13).

**RESPONSE: Admitted.**

6. On or about June 30, 2015, Nashville State promoted Plaintiff to Vice President of Institutional Effectiveness within the Office of Effectiveness and Strategic Initiatives, which raised her salary to $115,000, from which it eventually rose to $131,152.70. (Doc. No. 30 ¶ 14).

**RESPONSE: Admitted.**

7. The Agreements were temporary appointments with initial terms of one year and continuing from year to year until such time Plaintiff chose to return to her faculty position. (Setayesh Aff. ¶ 4).

**RESPONSE: Denied. Document No. 30, ¶ 21.**

8. Plaintiff's duties as Vice President of Institutional Effectiveness mainly included:

(i) overseeing human resources, creative services, and institutional research; and

(ii) monitoring resource allocations.

(Setayesh Aff. ¶ 5).

**RESPONSE: Denied. Plaintiff's written job description was much more detailed. Document No. 30, ¶ 22.**

9. During her time as an administrator, Plaintiff was a vocal proponent within the Office of Effectiveness and Strategic Initiatives and the broader College on issues relating to the proper functioning of the College, voicing concerns outside of her official job duties about policies or practices, including, inter alia:

(a) the lack of oversight in academic affairs which became a major cause for concern during the tenure of Ron Davis, the Vice President of Academic Affairs;

(b) the discovery that the schedule of courses was inconsistent and contained numerous errors, which cost the college thousands of dollars, denied many students access to courses, and threatened the academic integrity of Nashville State, its SACS accreditation, and its approval to offer Federal financial aid. The net result of the changes to address Plaintiff's concerns was that some faculty had to work a higher number of requisite hours;

(c) the discovery that two faculty members' courses contained copyright violations resulting in the removal of those faculty members' courses from the schedule;

3

(d) the discovery that at least one course, that had more than twenty students, was cancelled so as not to inconvenience a full-time faculty member;

(e) the discovery that the college had engaged in the practice of adding unnecessary sections in order to provide some faculty with preferred schedules, which cost the College more money to fund salaries;

(f) the discovery that a faculty member had cancelled seven classes without making up those classes or notifying her supervisor of the cancellation of those courses, prompting the resignation of said faculty member;

(g) the discovery that certain faculty had agreed to overload contracts which necessitated that the faculty increase their office hours but yet the faculty had not increased their office hours;

(h) the discovery that the campus notification system and process were weak, a violation of the Clery Act requiring schools to have timely warning when there are known risks to public safety on campus;

(i) the discovery that the Vice President of Finance and Administrative Services allowed an employee to attend classes during work hours, a policy violation;

(j) the discovery that Nashville State was offering certain online courses even though those courses had not been reviewed by the online committee to test the sufficiency of content, some courses being outdated and containing copyright violations;

(k) the discovery that TBR did not follow their own membership policy/template for the Nashville State Presidential Search Committee in October, 2017;

(l) the discovery that some deans asked nonexempt staff to teach in the classroom at night or during working hours, a violation of the Fair Labor Standards Act;

4

(m) the discovery that the College was using a "bridge contract" in order to avoid a break in service which was reported to the President of Nashville State and was referred to internal auditing for investigation; and

(n) the discovery of other miscellaneous practices that resulted in inefficient utilization of resources and violated applicable policies and procedures.

(Setayesh Aff. ¶ 6).

**RESPONSE: Denied. Defendants were not privy to Plaintiff allegedly voicing concerns but do aver that the alleged concerns as described in this paragraph would all fall within Plaintiff's official job duties, which were quite broad, per the written job description. Document No. 30, ¶ 23.**

10. Plaintiff's reporting of her concerns resulted in hostility and harassment from some faculty members at Nashville State, including, inter alia, faculty members of the College, including Senate Chairs and AAUP chair engaging in a smear campaign against her via letters and emails to the TBR, the entire Nashville State, and other faculty in Tennessee insulting Plaintiff and falsely accusing Plaintiff of wrongdoing, including alleged academic freedom violations, and ultimately resulted in three faculty sending correspondence to the TBR demanding that Plaintiff be terminated. Plaintiff was also subjected to verbal aggression and inappropriate behavior by Mary Cross, the Vice President of Financial and Administrative Affairs. TBR damaged the Plaintiff by remaining silent about this treatment when the TBR themselves had approved her qualifications and approved her appointment to an administrative position. (Setayesh Aff. ¶ 7-8).

5

**RESPONSE: Defendants are unable to admit or deny the allegations of this paragraph. Document No. 30, ¶ 24.**

11. Defendants Tydings and McCormick adopted those complaints and actions of the employees via their refusal to investigate or reprimand said employees and utilized the complaints and actions of those employees as the basis for the actions McCormick and Tydings took against the Plaintiff themselves. (Setayesh Aff. ¶ 12, 18).

**RESPONSE: Denied. Document No. 30, ¶ 25.**

12. Plaintiff's speech on the above issues was made as a citizen on matters of public concern. (Setayesh Aff. ¶ 9).

**RESPONSE: Denied. Document No. 30, ¶ 26.**

13. Plaintiff's speech on the above issues was often critical of and/or made in opposition to the Defendants. (Setayesh Aff. ¶ 9).

**RESPONSE: Denied. Document No. 30, ¶ 27.**

14. In or about August, 2017, Plaintiff met with Sheryl Gossard, Director of Human Resources, and requested guidance in filing a grievance against employees whom she perceived to be harassing her. (Setayesh Aff. ¶ 10).

**RESPONSE: Defendants are unable to admit or deny. Document No. 30, ¶ 28.**

15. Plaintiff forwarded examples of harassment and hostility to Mrs. Gossard. In turn, Mrs. Gossard reported same to Dr. Van Allen, President of Nashville State. (Setayesh Aff. ¶ 11).

**RESPONSE: Defendants are unable to admit or deny. Document No. 30, ¶ 29.**

16. Dr. Van Allen and the Plaintiff sought assistance from the TBR and Defendant Tydings, who advised them that Plaintiff could not use the grievance process, and Defendant Tydings, as a final decision maker at the TBR, refused to get involved and otherwise failed to investigate Plaintiff's complaints of harassment and hostility. (Setayesh Aff. ¶ 12).

**RESPONSE: Defendants are unable to admit or deny. Document No. 30, ¶ 30.**

17. As a result of emotional distress and poor quality of life resulting from the negativity, hostility and harassment during her tenure as Vice President of Institutional Effectiveness, Plaintiff, in or about September, 2017, put in a request to be transferred back to the position of tenured Professor at Nashville State from her temporary administrative role as Vice President of Institutional Effectiveness. (Setayesh Aff. ¶ 13).

**RESPONSE: Defendants are unable to admit or deny. Document No. 30, ¶ 31.**

18. Plaintiff followed the proper procedures when submitting her request. (Setayesh Aff. ¶ 14).

**RESPONSE: Defendants are unable to admit or deny. Document No. 30, ¶ 32.**

19. The 2017 Performance Review of Plaintiff's work assessed her performance as being "outstanding" and an "asset to the College." (Setayesh Aff. ¶ 15).

**RESPONSE: Defendants are unable to admit or deny. Document No. 30, ¶ 35.**

20. Prior to January, 2018, during the last weeks before Plaintiff moved back to faculty, TBR's legal counsel relayed to the Director of NSCC's Human Resources that the Director should "not worry" about the Plaintiff and that "Flora [Plaintiff] will be history in 2018," which Plaintiff was made aware of via note from Dr. Van Allen. (Setayesh Aff. ¶ 16).

**RESPONSE: Objection. Defendants move to strike this alleged 'fact' as this allegation has never before appeared in any pleading by Plaintiff. In the alternative and without waiving the objection, Defendants are unable to admit or deny.**

21. On January 9, 2018, the Tennessee Board of Regents appointed Kim McCormick as Interim President of Nashville State. TBR had previously employed Defendant McCormick as Vice Chancellor of External Affairs. (Doc. No. 30 ¶ 46; Setayesh Aff. ¶ 17).

**RESPONSE:  Admitted.**

22.  Defendant McCormick effectively removed Plaintiff from her position as of January 2, 2018 in that her authority was removed and Plaintiff's subordinates no longer reported to her. (Setayesh Aff. ¶ 18).

**RESPONSE:  Denied.  Document No. 30,  ¶ 48.**

23.  On or about February 12, 2018, Defendant McCormick or those she supervised notified Plaintiff that they had terminated her appointed position as Vice President of Institutional Effectiveness and ordered Plaintiff to return to her faculty position the following Monday. (Setayesh Aff. ¶ 19).

**RESPONSE:  Defendants aver that Plaintiff was paid her Vice President salary for another 30 days.  Defendants further aver that Plaintiff was offered the option of remaining in administration as Executive Director of Community and Civic Engagement at an annual salary of $101,900, but Plaintiff declined the offer.  Defendants admit that Plaintiff was told by the HR Director that "there is nothing further to explain."  Document No. 30, ¶ 49.**

24.  After the termination of her position, Plaintiff sent out a college-wide email thanking faculty for their services and saying her "goodbyes" in looking forward to her transfer back to faculty. (Doc. No. 30 ¶ 54; Setayesh Aff. ¶ 20).

**RESPONSE: Admitted.**

25. In response to this email, Defendant McCormick admonished Plaintiff by spontaneously creating a new rule disallowing college-wide emails without prior review and approval in an effort to intimidate and silence the Plaintiff. (Setayesh Aff. ¶ 20).

**RESPONSE: Denied. Document No. 30, ¶ 55.**

26. After Plaintiff transferred back to faculty, her treatment in the work place did not improve. Defendant McCormick immediately assigned Plaintiff to an unfavorable, difficult and undesirable teaching schedule that required Plaintiff to work two nights a week, in addition to her regular days teaching, at a campus across town in an apparent effort to punish Plaintiff. Doing so resulted in three part-time faculty members being removed from their classes in the middle of the semester. (Setayesh Aff. ¶ 23).

**RESPONSE: Denied. Plaintiff was offered several options as to teaching schedules. Document No. 30, ¶ 50.**

27. Plaintiff's travel time between these two campuses was not counted as time worked and she was not paid for such time, a violation of employee policies. (Setayesh Aff. ¶ 24).

**RESPONSE: Objection. Defendants move to strike this alleged 'fact' as this allegation has never before appeared in any pleading by Plaintiff. In the alternative and without waiving**

**the objection, Defendants aver that Plaintiff was, at all times relevant, a full-time faculty member and was paid accordingly.**

28. Furthermore, since February, Plaintiff has been subject to more overt attempts to remove her from the NSCC campus. Administrators have shown a desire to move her to Southeast Campus full time and have asked her twice to move – even though she never had a desire or request to work at Southeast Campus. (Setayesh Aff. ¶ 25-26).

**RESPONSE: Objection. Defendants move to strike these alleged 'facts' as these allegations have never before appeared in any pleading by Plaintiff. In the alternative and without waiving the objection, Defendants are unable to admit or deny.**

29. Defendant McCormick also used a large campus-wide meeting to bring attenetion to Plaintiff's professional standing and status. In that meeting, she thanked Fred Jordan, an employee at NSCC, for his email to sent to all faculty, requesting that Plaintiff's office area be shared and used by adjunct faculty. Defendant McCormick encouraged other faculty to freely use Plaintiff's office space. Plaintiff was at this meeting and was humiliated. Defendant McCormick and the Vice President of Academic Affairs even entered Plaintiff's office area unannounced with a master key to begin making Plaintiff's office space into a common area while she was still there. Soon after, Plaintiff was asked to move out of that office and into another office. (Setayesh Aff. ¶ 21).

**RESPONSE: Objection. Defendants move to strike these alleged 'facts' as these allegations have never before appeared in any pleading by Plaintiff. In the alternative and without waiving the objection, Defendants deny sentences one, two, three and five of this paragraph. Defendants are unable to admit or deny sentence four of this paragraph. Sentence six is admitted as Plaintiff did change offices when she moved from administration back to faculty.**

30. Numerous incidents have further shown others following the manner of McCormick and/or acting under her order. One example of this behavior was in response to filing Plaintiff's Complaint before this Court. Mr. Paul Kaminsky, Director of Computer Services, arrived at Plaintiff's office with Plaintiff's supervisor and stood in the hallway outside of her office door one morning in May, 2018 demanding that she produce her iPad per directive from the Attorney General and that all electronic devices had to be collected. Plaintiff was scared and humiliated by the public nature of the intrusion and was shaking even an hour after he left. (Setayesh Aff. ¶ 22).

**RESPONSE: Objection. Defendants move to strike these alleged 'facts' as these allegations have never before appeared in any pleading by Plaintiff. In the alternative and without waiving the objection, sentences one and two of this paragraph are denied, and Defendants are unable to admit or deny the allegations of sentence four. With respect to the allegations of sentence three, Defendants aver that a litigation hold was put in place as a result of Plaintiff's lawsuit and the state-issued computers and electronics of all individuals with possible relevant information were scanned, not just those of Plaintiff.**

31. For days after this intrusion, Plaintiff noticed that staff were logging onto her office computer remotely and searching through her electronically stored information. (Setayesh Aff. ¶ 22).

**RESPONSE: Objection. Defendants move to strike these alleged 'facts' as these allegations have never before appeared in any pleading by Plaintiff. In the alternative and without waiving the objection, Defendants are unable to admit or deny as they do not know what Plaintiff allegedly 'noticed.'**

32. Another example of being singled out while a faculty member at NSCC occurred when Plaintiff's supervisor emailed and informed her that she would not get her full teaching schedule until the search for another faculty member was underway, which was unheard of. Tenured faculty must be scheduled despite searches for new faculty. Plaintiff's peers were not subject to this treatment. (Setayesh Aff. ¶ 27).

**RESPONSE: Objection. Defendants move to strike these alleged 'facts' as these allegations have never before appeared in any pleading by Plaintiff. In the alternative and without waiving the objection, Defendants are unable to admit or deny these allegations.**

33. The existing hostile work environment is a by-product of the retaliatory activities of Defendant McCormick, and followed by newly appointed president, Shanna L. Jackson. In August, 2018, during a Faculty Senate meeting, many employees were not happy with and questioned the decision not to offer equity raises for the 2018-2019 year. President Jackson attributed the cause to an outdated plan and lack of "documentation" directing blame to the Human

13

Resources Department, which oversees salaries, and which Plaintiff supervised in her administrative role. (Setayesh Aff. ¶ 28).

**RESPONSE: Objection. Defendants move to strike these alleged 'facts' as these allegations have never before appeared in any pleading by Plaintiff. In the alternative and without waiving the objection, Defendants are unable to admit or deny these allegations.**

34. Plaintiff, through her knowledge of the budget of the administration, determined that the most likely reason for not offering salary raises was because former President McCormick had greatly increased administrative costs through promotions, new hires, and what appears to be arbitrary equity raises to some high-level administrators. She even promosted her own TBR staff member as the new Vice President at NSCC and hired an Executive Director to help her, their salaries being the most costly at above six figures each. Some administrators simply received raises due to reclassifications while other new administrative positions were even created and filled. (Setayesh Aff. ¶ 29).

**RESPONSE: Objection. Defendants move to strike these alleged 'facts' as these allegations have never before appeared in any pleading by Plaintiff. In the alternative and without waiving the objection, Defendants are unable to admit or deny as they do not know what Plaintiff allegedly 'determined.'**

35. These activities have negatively affected Plaintiff's reputation and health. Employees have expressed concern for Plaintiff, displaying knowledge that Plaintiff's treatment in and around the NSCC community is in fact known to others. (Setayesh Aff. ¶ 30).

**RESPONSE: Objection. Defendants move to strike these alleged 'facts' as these allegations have never before appeared in any pleading by Plaintiff. In the alternative and without waiving the objection, Defendants are unable to admit or deny these allegations.**

36. Other faculty members have left or retired as a result of this hostile work environment. One faculty member even stated to Plaintiff via email that he wanted to thank her and Dr. Van Allen, the former President of the College, for trying to do what was best for the school. However, in the same email, said faculty member stated that the "cancer" of the NSCC work environment had become too much to take. (Setayesh Aff. ¶ 31).

**RESPONSE: Objection. Defendants move to strike these alleged 'facts' as these allegations have never before appeared in any pleading by Plaintiff. In the alternative and without waiving the objection, Defendants are unable to admit or deny these allegations.**

37. Employees of Nashville State and TBR opposed Plaintiff's administrative role and oversight in whole or in part because of her speech on matters of public concern and Defendants McCormick and Tydings, as final decision makers at those institutions, adopted the employees' position by refusing to investigate and/or reprimand those employees for their actions. (Setayesh Aff. ¶¶ 6-12, 16-31).

**RESPONSE: Denied. Document No. 30, ¶ 61.**

 

38. Plaintiff would not have been subjected to retaliation for speech on matters of public concern but for the existence of the customs and practices of Nashville State and TBR, for which Defendants McCormick and Tydings were final policy makers, as follows:

(a) Defendants Tydings and McCormick were aware of numerous incidents of unconstitutional attempts by employees to retaliate against Plaintiff for speech on matters of public concern;

(b) Defendants Tydings and McCormick failed to properly train, supervise, investigate and/or discipline its employees to prevent such incidents from occurring;

(c) In failing to properly train, supervise, investigate and/or discipline its employees, Defendants Tydings and McCormick acted with deliberate indifference to the likelihood that future constitutional violations would occur; and

(d) In addition, and in the alternative, the unconstitutional decision to deny Plaintiff access to grievance processes for the hostile work environment to which she was subjected was made by Defendant, Flora Tydings, a final policy maker at the TBR.

(Setayesh Aff. ¶¶ 6-12, 16-31).

**RESPONSE: Denied. Document No. 30, ¶ 63.**

Respectfully submitted,

**HERBERT H. SLATERY III
ATTORNEY GENERAL AND REPORTER**

s/ John W. Dalton
**JOHN W. DALTON, BPR No. 16653
Senior Assistant Attorney General**
Civil Litigation and State Services Division
UBS Tower, 18th Floor
P.O. Box 20207
Nashville, Tennessee 37202-0207
615-741-8062
john.dalton@ag.tn.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2018, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt as follows:

L. Gilbert Anglin
L. Garrett Anglin
Attorneys for Plaintiff
8 Lincoln Square
1535 West Northfield Blvd.
Murfreesboro, Tennessee 37129
anglin@lawyer4u.com
garrettanglin@gmail.com

All other parties will be served by regular U.S. mail as follows: (n/a). Parties may access this filing through the Court's electronic filing system.

s/ John W. Dalton
**JOHN W. DALTON
Senior Assistant Attorney General**